[Civ. No. 25696.   First Dist., Div. One.   June 18, 1969.]

VIRGINIA M. WILLIAMS, Plaintiff and Respondent, v. SEABOARD LIFE INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

Luckham, Fenton & Lieber and Fred C. Fenton for Defendant and Appellant.

Rockwell, Keenan & Mathewson and Clyde R. Rockwell for Plaintiff and Respondent.

ELKINGTON, J.—In an action on three medical and hospital cost reimbursement policies, defendant Seaboard Life Insurance Company of America (Seaboard) appeals from a judgment, after a court trial, in favor of plaintiff Virginia M. Williams. Seaboard had contended that plaintiff misrepresented and concealed material facts of her medical history, thus relieving the company from liability.

As our first inquiry is whether there is *any* substantial evidence in support of the trial court's findings and judgment, we state the facts in a light most favorable to plaintiff who

prevailed in that court. We give her the benefit of every reasonable inference and resolve conflicts in her favor. (See *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].)

S. J. Posner was an authorized representative of Hospital Fund Agency which in turn represented Seaboard. On December 16, 1963, he called upon plaintiff's husband. They went upstairs and talked. Later, plaintiff was called upstairs where she answered questions asked by Mr. Posner. She was then told to sign some papers, which she did. The papers were two identical applications for insurance. Except for the signatures of plaintiff, the forms were filled out in the handwriting of Mr. Posner. On each application appeared the printed question: "Have any of the above named persons received medical or surgical treatment or advice within the last five years? If so explain fully." Following were two blank lines, each about seven inches in length. In each application this space was completely occupied by Mr. Posner's handwriting as follows: "7/63 Broken left wrist. Recovery complete (Dr. V. M. Dillon, 2166 Hayes Street) S.F. Benign intestinal tumorectomy—Dr. T. J. Whalen, 2020 Hayes, S.F." Mr. Posner was described on the application forms as the "licensed representative" of Seaboard.

Around September 23, 1963, plaintiff's personal physician Dr. Solomon had, at someone's request, on an "insurance carrier" form, filled out a complete report on plaintiff's medical history. His records showed that the original report was sent to plaintiff; he retained a copy.

Some time after the applications were signed, plaintiff's husband received the two insurance policies. With the policies was a "Hospital Fund Agency" advertising brochure on which the following was typewritten:

"Dear Roy:

Am very pleased to enclose the Lifetime Security Policies of Virginia's, all in perfect order. Her medical report offered no obstacle to my issuing the guaranteed renewable coverage, for which I know you will be happy.

They are fully paid up until Jan. 10, 1965, and pay off in cash directly to you in addition to any other insurance you may carry.

Your additional supplement, Roy, will be along soon; I didn't want to hold up on Virginia's.

[Handwritten and signed as follows:]

> See you soon.
> Good Health!
> S. J. Posner"

In 1965 plaintiff again purchased insurance from Seaboard through its representative Hospital Fund Agency; one Lester Greene was then the agent. This time the two lines in question were filled in the handwriting of Mr. Greene as follows: "Oct. 1965 — Comp. Physical Checkups — semi-annual — Results neg."

In 1966 plaintiff was involved in a serious automobile accident. She sustained, among other injuries, two fractures of the skull, a laceration which exposed the brain, a fractured hip, a fractured arm, a fractured nose and an eye cut by glass. Her hospital medical and surgical expenses totaled approximately $9,000.

Plaintiff later made claim under the policies for reimbursement of her expenses. Seaboard, through a retail credit agency, secured from Dr. Solomon a statement of his diagnosis and treatment of plaintiff over the preceding five years. This statement contained a history of "discogenic disease." Seaboard thereupon rejected plaintiff's claim for the alleged reason that her "discogenic disease" had not been disclosed in the applications of December 16, 1963. With this notification a check for all premiums paid by plaintiff was handed to her.

Plaintiff's husband passed away before the trial. Dr. Solomon testified that "discogenic disease is a degenerative disease, or wearing of the disc, so that the vertebral spaces are narrowed. Associated with this, there is often times calcium deposits, or projections on the side of the vertebra, which narrows the opening through which the nerves pass. This causes pressure on the nerves" resulting in pain. He had made this diagnosis because she complained of pain and stiffness in her neck. He said the condition "would fall under the broad classification of arthritis" and that it was not "an unusual condition for a lady of" plaintiff's age.

Seaboard makes no contention that Dr. Solomon's report of September 23, 1963, was not a fair and true medical history of his patient. Instead, the company denies receiving or having any knowledge of that report. Mr. Posner, the agent, was not produced as a witness.

The trial court found that plaintiff had submitted Dr. Solomon's report of September 23, 1963, to Mr. Posner who in

turn submitted it to Seaboard; that plaintiff had disclosed all material facts as required by the application; and that no act of plaintiff deceived or misled the company.

We conclude that these findings are supported by substantial evidence. Plaintiff had no recollection of giving Dr. Solomon's report to Mr. Posner; the evidence indicates a memory defect resulting from the accident. However, on an "insurance carrier" form the doctor prepared and mailed to plaintiff an admittedly complete medical report. Delivering the policies to plaintiff's husband, Mr. Posner stated in writing, "Her [plaintiff's] *medical report* offered no obstacle to my issuing the guaranteed renewable coverage." (Italics added.) From this evidence the trial judge could reasonably have concluded that Seaboard had a complete and accurate medical history of plaintiff and was in no way misled by her.

Seaboard insists that the trial court erred in admitting into evidence the previously mentioned "Dear Roy" note of Mr. Posner and another piece of advertising matter (of questionable materiality) containing handwriting of Lester Greene. It is urged that no evidence was offered by plaintiff "to prove who was responsible for the notations, or the time they were placed on the pamphlet and brochure." This contention is without merit. The signatures of Seaboard's agents were available on the policies for comparison by the judge with the signatures on the pamphlet and brochure. (Evid. Code, § 1417.) It could reasonably be concluded that the notations were placed on the pamphlet and brochure by Seaboard's authorized agents, acting within the course and scope of their agency, sometime between the solicitation and delivery of the policies to which they refer. Furthermore, there was direct evidence that the pamphlet was received in the mail with the policies.

Next, Seaboard points out that its policies provide liability for only one operation if as a result of an "injury" more than one operation becomes necessary. It is contended that the judgment is excessive because it provides reimbursement for each of the several operations which necessarily resulted from plaintiff's accident.

We note that elsewhere the policies stated: "[T]his policy provides benefits for . . . surgical *operations* . . . that results [*sic*] . . . from accidental bodily *injuries*. . . ." (Italics added.) Following established rules that ambiguities of an insurance policy are to be resolved against the insurer (*Con-*

*tinental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914]), the trial court properly held the policy to provide payment for *operations* resulting from accidental bodily *injuries.* Plaintiff, having suffered multiple (but separate) injuries, was entitled to compensation for one operation made necessary as a result of each injury.

The case of *Dietlin* v. *Missouri State Life Ins. Co.,* 126 Cal.App. 15, 22 [14 P.2d 331, 15 P.2d 188], upon which Seaboard relies, is clearly inapposite. There the policy before the court clearly limited coverage to compensation for one operation as a result of each "accident," whereas here the insured ·is entitled to compensation for one operation as a result of each "injury."

Because of the conclusions we have reached, resolution of other points raised by Seaboard becomes unnecessary to a determination of this appeal.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.